**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**A.H. by his m/n/g Esther Horowitz,**
**C.H. by her m/n/g Esther Horowitz, and**
**MENDY HOROWITZ,**

**Plaintiffs**

**v.**

                                                       **1:19-CV-298**
                                                          **(FJS/CFH)**

**PRECISION INDUSTRIAL MAINTENANCE**
**INC. and LELAND THOMAS,**

**Defendants.**

_____

| **APPEARANCES** | **OF COUNSEL** |
|---|---|
| **LAW OFFICES OF ADAM J. ROTH** | **ADAM ROTH, ESQ.** |
| 112 Madison Avenue, 6th Floor | |
| New York, New York 10016 | |
| Attorneys for Plaintiffs | |
| | |
| **GOLDBERG SEGALLA, LLP** | **THOMAS P. ARMSTRONG, ESQ.** |
| 8 Southwoods Boulevard, Suite 300 | |
| Albany, New York 12211-2526 | |
| Attorneys for Defendants | |

**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

Plaintiffs A.H. ("Plaintiff A.H.") and C.H. ("Plaintiff C.H."), by their mother and natural

guardian Esther Horowitz ("Mrs. Horowitz"), and Plaintiff Mendy Horowitz ("Plaintiff

Horowitz") brought this personal injury action against Precision Industrial Maintenance Inc.

("Defendant Precision") and its employee, Leland Thomas ("Defendant Thomas"), hereinafter

collectively referred to as "Defendants," seeking a judgment in excess of the $75,000 jurisdictional limit required for diversity jurisdiction  *See generally* Dkt. No. 1, Complaint.


## II. PROCEDURAL HISTORY

Plaintiffs filed their complaint against Defendants on February 1, 2019, after an alleged motor vehicle collision that occurred on August 9, 2018 (the "Collision").  *See generally* Dkt. No. 1.  In response, Defendants filed their answer with affirmative defenses.  *See generally* Dkt. No. 5.  Plaintiffs then moved for partial summary judgment on the issue of liability and to strike Defendants' affirmative defenses of comparative negligence and failure to use a seatbelt.  *See generally* Dkt. No. 23-1.  Defendants then filed a cross-motion for summary judgment to dismiss Plaintiffs A.H.'s and C.H.'s claims based on the serious injury threshold, *see generally* Dkt. No. 27-11, and then subsequently filed an amended cross-motion for summary judgment, *see* Dkt. No. 28.  On February 2, 2021, Plaintiffs' counsel filed a Declaration dated December 22, 2020, stating that the parties had settled Plaintiff C.H.'s claims.[1]  *See* Dkt. No. 33.

Pending before the Court are Plaintiffs' motion for partial summary judgment and Defendants' cross-motion for summary judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure.  *See* Dkt. Nos. 23, 27, 28.  To resolve these motions, the Court must determine the following:

> (1) Whether Plaintiffs were comparatively negligent and whether Plaintiff A.H. failed to use a seatbelt in the Collision;

---

[1] Since the parties settled Plaintiff C.H.'s claim and do not discuss Plaintiff Horowitz's claims in their submissions, the Court will only address Plaintiff A.H.'s claims.

    (2) Whether Defendant Thomas' prior guilty plea to the violation
       of New York Vehicle and Traffic Law ("VTL") Section
       1110(a) constitutes negligence *per se*;

    (3) Whether Defendant Thomas was negligent by crossing the
       double yellow line immediately prior to the Collision, if the
       Court does not determine that he was negligent *per se*; and

    (4) Whether the injuries that Plaintiff A.H. suffered as a result of
       the Collision meet the serious injury threshold under New York
       Insurance Law § 5104(a).

## III. DISCUSSION

### A. Standard of review

Under Rule 56(a) of the Federal Rules of Civil Procedure, a party is entitled to summary judgment on a claim or defense when the moving party shows that (1) no genuine dispute of material fact exists, and (2) it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). Initially, the moving party bears the burden of showing through admissible evidence that no genuine issue of material fact exists. *See Lee v. City of Troy*, No. 1:19-CV-473, __ F. Supp. 3d __, 2021 WL 567240, *7 (N.D.N.Y. Feb. 16, 2021) (citing *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006)). Upon making that showing, the burden shifts to the non-moving party to show through admissible evidence that a genuine issue of material fact exists. *See id.* (citing [*Salahuddin*, 467 F.3d] at 273).

A fact is considered material if it might impact the outcome of the action under governing substantive law and a dispute of material fact is considered genuine where a reasonable jury viewing the evidence could rule in the nonmoving party's favor. *See Sanders v. Torres*, No. 9:19-CV-697 (GTS/CFH), 2021 WL 799263, *7 (N.D.N.Y. Feb. 8, 2021) (citing *Anderson [v. Liberty Lobby, Inc.]*, 477 U.S. at 248). In determining whether a genuine issue of material fact

exists, "the Court must resolve all ambiguities and draw all reasonable inferences against the moving party." *Lee*, 2021 WL 567240, at *8 (citing *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008)). Additionally, to survive a motion for summary judgment, the nonmoving party must do more than rely on "conclusory allegations or denials" or speculate and cast "metaphysical doubt" on the material facts in question. *See Sanders*, 2021 WL 799263, at *8 (citations omitted).

## B. Plaintiffs' motion for summary judgment

### 1. *Plaintiffs' comparative negligence and Plaintiff A.H.'s use of a seatbelt*

"'Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way.'" *Moore v. Keller*, 498 F. Supp. 3d 335, 346 (N.D.N.Y. 2020) (quoting *Frantti v. New York*, 414 F. Supp. 3d 257, 291 (N.D.N.Y. 2019) (quoting *Taylor v. City of N.Y.*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003))). As the Second Circuit has explained, "a partial opposition [to a motion for summary judgment] may imply an abandonment of some claims or defenses. Generally, but perhaps not always, a partial response reflects a decision by a party's attorney to pursue some claims or defenses and to abandon others." *Jackson v. Fed. Express*, 766 F.3d 189, 196 (2d Cir. 2014). Thus, where a counseled party's abandonment of a claim or defense may be fairly inferred from his submissions and the circumstances as a whole, the Court may conclude that the party intentionally abandoned such claim or defense. *See id.*

As to Plaintiffs' argument that the Court should strike Defendants' comparative negligence and seatbelt affirmative defenses, Defendants fail to refute or even address these

issues in either their opposition to Plaintiffs' motion or their cross-motion for summary judgment. *See generally* Dkt. No. 27-11. Plaintiffs supported this part of their motion with testimony from both Plaintiff Horowitz and Mrs. Horowitz stating that Plaintiff A.H. was wearing a seatbelt. *See* Dkt. Nos. 23-7 at 47, 51-52; 23-9 at 19. Since Defendants have not addressed Plaintiffs' argument or refuted the testimony Plaintiffs have provided, the Court holds that Defendants have abandoned their affirmative defenses that Plaintiffs were comparatively negligent and that Plaintiff A.H. was not wearing a seatbelt and grants Plaintiffs' motion for partial summary judgment to strike these affirmative defenses.

### 2. Defendants' negligence

For a plaintiff to establish negligence under New York law, he must show that (1) the defendant has a duty to act in a certain manner in relation to the plaintiff; (2) the defendant breached this duty; and (3) the plaintiff was injured as a result of the breach. *See McGrath v. Indus. Waste Techs.*, No. 20 Civ. 2858 (KPF), 2021 WL 791537, *9 (S.D.N.Y. Feb. 26, 2021) (quoting *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 428 (2d Cir. 2013) (quoting *Akins v. Glens Falls City Sch Dist.*, 53 N.Y.2d 325, 333 (1981))). New York law provides that a defendant's unexcused violation of a statute establishing a standard of care constitutes negligence *per se*; however, the plaintiff is still required to show that the violation proximately caused the occurrence in question. *See id.* (citing *Dalal v. City of New York*, 629 N.Y.S.2d 468, 469 (2d Dep't 1999)); (quoting *Dance v. Town of Southampton*, 467 N.Y.S.2d 203, 206 (2d Dep't 1983)). Sections of the New York VTL relating to the operation of a vehicle create a statutory standard of care. *See Mahar v. US Xpress Enters., Inc.*, 688 F. Supp. 2d 95, 108 (N.D.N.Y. 2010) (citing [*Dalal*, 262 A.D.2d at 597]) (other citation omitted). Therefore, when evidence establishes both

that the defendant inexcusably violated New York's VTL and that the violation proximately

caused the plaintiff harm, the plaintiff is entitled to summary judgment on the issue of liability.

*See Moe. v. United States*, 668 F. Supp. 2d 497, 503 (W.D.N.Y. 2009) (citing *Stalikas v. United*

*Materials, L.L.C.*, 306 A.D.2d 810, 760 N.Y.S.2d 804, 805 (4th Dep't 2003) (holding, in the

context of a personal injury action to recover injuries sustained in five-vehicle collision in which

defendant driver was allegedly following too closely in violation of N.Y. Veh. & Traf. Law

§ 1129, that "even in the event that the jury found that defendants violated the statute, it is

evident that, based upon the nonnegligent explanations of defendants credited by the jury, the

jury would have found that any violation was excused.")); *see also Castle v. United States*, No.

1:15-CV-0197 (GTS/TWD), 2017 WL 6459514, *11 (N.D.N.Y. Dec. 18, 2017) (collecting cases

stating this principle).

New York VTL § 1110(a), which is at issue here, relates to the operation of a vehicle as it

provides that "every person shall obey the instructions of any official traffic-control device

applicable to him" and one cannot disobey a traffic control device when his vehicle is not in

operation. *People v. Erdman*, 145, Misc. 2d 358, ___, 546 N.Y.S.2d 775, 775, 776-77 (N.Y. J.

Ct. 1989) (stating that "[a] violation of [§ 1110(a)] is a traffic infraction and a moving violation"

and holding that defendant was not guilty of violating § 1110(a) where "the vehicle was not in

operation, and therefore no true moving violation actually occurred"). Therefore, it imposes a

statutory duty of care upon motor vehicle drivers to obey the instructions of all official traffic-

control devices that apply to them when they encounter them on the road. Markings on the road,

such as double yellow lines, are considered a traffic-control device under VTL § 1110(a). *See*

*People v. Quiros*, No. 2019-490 W CR, 2020 WL 629634, *1 (N.Y. App. Term Jan. 30, 2020)

(citations omitted); *United States v. James*, No. 10 Cr. 1293 (RPP), 2011 WL 6306721, *4 (S.D.N.Y. Dec. 16, 2011) (citations omitted).

Defendant Thomas pled guilty to violating VTL § 1110(a), *see* Dkt. No. 23-4, which, under New York law, can serve as some evidence of, but is not sufficient on its own to establish, negligence *per se*. *See Shaw v. Rosha Enters., Inc.*, 129 A.D.3d 1574, 1576 (4th Dep't 2015) (collecting cases); *Streeter v. Kingston (Hartman)*, No. 98-1955, 2004 WL 624922, *6-*7 (N.Y. Sup. Ct. Mar. 16, 2004) (citing *Guarino v. Woodworth*, 204 A.D.2d 391, 611 N.Y.S.2d 638 (2d Dep't 1994) (citing *Ando v. Woodberry*, 8 N.Y.2d 165, 171 (1960)); *Lohraseb v. Miranda*, 46 A.D.3d 1266, 1266 (3d Dep't 2007) (citing *Ando v. Woodberry*, 8 N.Y.2d 165, 168-69, 170-71 (1960); *McGraw v. Ranieri*, 202 A.D.2d 725, 726 [(3d Dep't] 1994).  Thus, Defendant Thomas' guilty plea, on its own, is insufficient to establish that he was negligent *per se* in relation to the Collision.  However, it is sufficient in conjunction with the testimony, witness declaration, and accident report that Plaintiffs offer.

Plaintiff Horowitz testified that Defendant Thomas' truck crossed out of his own lane and into Plaintiffs' lane before hitting Plaintiffs' car straight on.  *See* Dkt. No. 23-7 at 66.  In addition, Mrs. Horowitz testified that Defendant Thomas' truck crossed over the yellow line and hit Plaintiffs' car.  *See* Dkt. No. 23-9 at 25-26.  Plaintiffs' witness, Ronald Mitchell, also submitted a sworn declaration stating that he witnessed the Collision and describing the Collision.  *See* Dkt. No. 23-5.  According to Mr. Mitchell's declaration, on August 9, 2018, he was driving eastbound on Route 7 and was "probably 300 feet behind a propane truck" that drove straight on a bend in the road, crossed the double yellow lines, and struck the front and entire driver's side of a van traveling in the opposite direction.  *See generally id.*  Mr. Mitchell declared that the van did not cross the double yellow lines.  *See id.* at ¶ 12.  Finally, the police accident report that was

recorded after the Collision indicates that Defendant Thomas' vehicle was traveling at an unsafe speed around a downhill curve on the road, crossed the double yellow line into the oncoming westbound lane, and struck Plaintiffs' vehicle. *See* Dkt. No. 23-3 at 1. The police report has Mr. Mitchell recorded as a witness of the Collision. *See id.* Based on this evidence and Defendant Thomas' guilty plea to violating VTL § 1110(a), Plaintiffs have established a prima facie case that Defendant Thomas was negligent per se by crossing the double yellow line and causing the Collision in violation of VTL § 1110(a).

Defendant Thomas subsequently testified that (1) he "d[id] not quite recall" his car crossing the double yellow line, as the accident report states; (2) the accident report states that his car hit Plaintiffs' car, but Plaintiffs' car actually struck his car; and (3) "as far as [he] knew" he was in his own lane immediately prior to the Collision. *See* Dkt. No. 23-6 at 20, 51. However, these statements fail to refute Plaintiffs' evidence that Defendant Thomas violated § 1110(a) and caused the Collision. Defendant Thomas' testimony that he "d[id] not quite recall" his car crossing the double yellow line and that he was in his own lane "as far as [he] knew" essentially amounts to him stating that he does not recall how the accident occurred and then speculating that he was in his own lane. This is insufficient to create an issue of fact. *See Fillette v. Lundberg*, 150 A.D.3d 1574, 1575 (3d Dep't 2017); *Kowalyk v. Wal-Mart Stores, Inc.*, 187 A.D.3d 1539, 1540 (4th Dep't 2020) (stating that "Defendant's claimed inability to recall the circumstances of the accident 'is not affirmative proof that the event did not happen . . . [and is] thus insufficient to create an issue of fact'" (quoting *Bavisotto v. Doldan*, 175 A.D.3d 891, 893 (4th Dep't 2019))); *Ramos v. Sande*, No. 2003-477 QC, 2004 WL 422866, *1 (2d Dep't Jan. 29, 2004) (finding that the plaintiff's testimony that she did not know how the car accident occurred was insufficient to rebut the evidence supporting the defendant's motion for summary judgment

(citation omitted)); *Patti v. New York City Transit Auth.*, 296 A.D.2d 484, 484 (2d Dep't 2002) (granting the defendant's motion for summary judgment and stating that, "[s]ince the plaintiff did not recall how the accident occurred, his deposition testimony was insufficient to refute the bus driver's account of the incident or to raise a triable issue of fact" (citations omitted)).

Additionally, Defendant Thomas' testimony indicating that Plaintiffs' car hit his car instead of the other way around, as the police report indicates, is insufficient to create a genuine issue of fact because Defendants have not supported this theory of how the Collision occurred with other evidentiary material. *See Pichardo v. Urban Renaissance Collaboration Ltd. P'ship*, 51 A.D.3d 472, 473 (1st Dep't 2008) (holding that defendants "failed to set forth a conflicting theory with supporting evidentiary material, other than mere speculation as to how the accident occurred, sufficient to raise a triable issue of fact" where they merely offered general contractor's testimony that he "did not recall whether there was a hole in the floor" and that he usually did not allow workers to "make the hole"). In other words, Defendant Thomas' testimony amounts to nothing more than a conclusory denial of and speculation upon a material fact going directly to whether Defendant Thomas violated VTL § 1110(a) and caused the Collision. *See Sanders*, 2021 WL 799263, at *8 (stating that conclusory denials and speculation about material facts are insufficient to survive summary judgment).

Therefore, Defendants have failed to rebut Plaintiffs' prima facie showing that Defendant Thomas was negligent *per se*. Accordingly, the Court grants Plaintiffs' motion for partial summary judgment on the issue of liability.

**C.  Defendants' cross-motion for summary judgment**

Under New York Insurance Law, a party may bring a personal injury action for noneconomic losses resulting from an automobile accident only where such party has suffered "serious injury."  *See Fillette*, 150 A.D.3d at 1576 (citing *Jones v. Marshall*, 147 A.D.3d 1279, 1283 ([3d Dep't] 2017); [N.Y.] Insurance Law § 5104(a)) (other citation omitted).  New York Insurance Law § 5102(d) defines "serious injury" as

> a personal injury which results in death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment.

N.Y. Ins. Law § 5102(d).

On a cross-motion for summary judgment, a defendant seeking to establish that a plaintiff has not sustained a "serious injury" under § 5102(d) bears the initial burden of establishing such with competent medical evidence.  *See Fillette*, 150 A.D.3d at 1576 (citing *Baez v. Rahamatali*, 6 N.Y.3d 868, 869 (2006); *DeHaas v. Kathan*, 100 A.D.3d 1057, 1058 ([3d Dep't] 2012)).  Upon making this initial showing, the plaintiff must then produce "'objective medical evidence sufficient to create a question of fact regarding the existence of a serious injury caused by the accident.'"  *Id.* (quoting *Cross v. Labombard*, 127 A.D.3d at 1356); (citing *Baez v. Rahamatali*, 6 N.Y.3d at 869).

As an initial matter, with regard to Plaintiff A.H.'s alleged spleen trauma, Defendants argue that Plaintiffs have not correlated Plaintiff A.H.'s spleen injury with any of the "serious

injury" categories because it has not permanently or significantly impaired him and has not prevented him from performing his usual daily activities. Given that Plaintiffs address Plaintiff A.H.'s alleged head injury in great detail in their opposition but fail to address his alleged "splenic trauma" injury, the Court finds that Plaintiff A.H. has abandoned his alleged "splenic trauma" injury claim. *See Jackson*, 766 F.3d at 196; *Moore*, 498 F. Supp. 3d at 346 (quoting *Frantti v. New York*, 414 F. Supp. 3d 257, 291 (N.D.N.Y. 2019) (quoting *Taylor v. City of N.Y.*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003))). As a result, the Court grants Defendants' cross-motion for summary judgment on the issue of "serious injury" as to Plaintiff A.H.'s alleged "splenic trauma."

Moreover, Defendants have established a prima facie case that Plaintiff A.H. has not suffered a "serious injury" with regard to Plaintiff A.H.'s alleged "suspected fracture of the left arm." Defendants cite Plaintiff A.H.'s medical records from Albany Medical Center, which show that the final report from an x-ray that he received on his left arm on the day of the Collision and his discharge summary indicate that he did not suffer a left arm fracture. *See* Dkt. Nos. 27-11 at 15; 28-4 at 4-8. This is sufficient to establish a prima facie case that Plaintiff A.H. did not suffer a left arm fracture, and Plaintiffs do not attempt to refute Defendants' argument. *See Diaz v. Speedy Rent A Car*, 259 A.D.2d 726, 726-27 (2d Dep't 1999) (holding that the defendants established their entitlement to judgment as a matter of law where hospital records indicated that the plaintiff sustained no fractures, dislocations, or spinal injuries and the plaintiff failed to raise an issue of fact). Thus, the Court grants Defendants' cross-motion for summary judgment on the issue of "serious injury" as to Plaintiff A.H.'s alleged left arm fracture.

Finally, with regard to Plaintiff A.H.'s alleged head injury, Plaintiffs are incorrect to argue that Dr. Abelove's status as a psychologist means he lacks the authority to render a medical diagnosis or opinion.  As a licensed psychologist with experience in psychology, Dr. Abelove is qualified to provide an expert opinion about Plaintiff A.H.'s alleged brain injuries and impairments suffered during the Collision.  *See Dziuma v. Jet Taxi, Inc.*, 148 A.D.3d 573, 573-74 (1st Dep't 2017) (finding that the defendant had shown a prima facie case that plaintiff did not suffer "serious injury" by submitting reports from, among others, its psychologist); *Guzman v. 4030 Bronx Blvd. Assocs. L.L.C.*, 54 A.D.3d 42, 48 (1st Dep't 2008) (stating that "[t]his Court has recognized that a medical opinion can be received from a witness who, though lacking a medical degree, is properly qualified by training and experience" and noting that neuropsychologists have been found qualified to testify as to impairment from brain injury (citations omitted)); *Lysniak v. Boursiquot*, 11 Misc. 3d 448, 449 (N.Y. Sup. Ct. 2006) (stating that findings by a clinical psychologist are sufficient on their own to defeat a motion for summary judgment (citations omitted)).

Furthermore, Plaintiffs' reliance on *Leopold v. New York City Transit Auth.*, 72 A.D.3d 906 (2d Dep't 2010), and *Green v. New York State Cath. Health Plan, Inc.*, 133 A.D.3d 473 (1st Dep't 2015), for the proposition that Dr. Singer's report is improper because it fails to compare Plaintiff A.H.'s cervical spine range of motion to a normal cervical spine range, is inapt. Although it is true that Dr. Singer's expert report addresses Plaintiff A.H.'s cervical spine range of motion without comparing it to a normal range of motion, Plaintiff A.H.'s claim is not based upon any alleged injury to his spine.  *See* Dkt. No. 1 at ¶ 43 (alleging that Plaintiff A.H. suffered a "serious injury" in the Collision because "he suffered a suspected fracture of the left arm, splenic trauma and a head injury").  Thus, whether or not Dr. Singer compared Plaintiff A.H.'s

cervical spine range of motion to normal ranges of motion is irrelevant to determining if Plaintiff A.H. suffered a serious injury in the Collision.  Moreover, Plaintiffs' argument that Dr. Singer's report does not provide an opinion regarding Plaintiff A.H.'s traumatic brain injury is also incorrect.  Dr. Singer's report indicates that Plaintiff A.H.'s head/cervical spine CAT scan showed no signs of acute traumatic injury, he had no need for further treatment at that time, and he reached Maximum Medical Improvement from a neurosurgical perspective.  *See* Dkt. No. 28-7 at 30.  Therefore, Dr. Singer's and Dr. Abelove's opinions are competent medical evidence.

Moreover, despite Plaintiffs' arguments to the contrary, Defendants have established a prima facie case that Plaintiff A.H.'s alleged head injury does not qualify as a serious injury.  Dr. Singer's report, which was based on a physical examination and a review of various medical records containing test results from immediately after the Collision, found to a reasonable degree of medical certainty that there was no evidence of permanent injury or disability and that Plaintiff A.H. showed no evidence of acute traumatic injury, did not need additional treatment, and reached Maximum Medical Improvement from a neurosurgical perspective.  *See* Dkt. No. 28-7 at 27-30.  In addition, Dr. Abelove reviewed various medical records and concluded that records relating to the Collision did not show head impact, loss of consciousness, or post traumatic amnesia and that Plaintiff A.H. should not expect to experience cognitive deficits.  *See* Dkt. No. 28-6 at 31.  Furthermore, Dr. Abelove conducted a neuropsychological/psychological examination during which he administered various standardized cognitive tests and compared the findings with Plaintiff A.H.'s academic and medical records, which led him to conclude that Plaintiff A.H. did not present with evidence for a neuropsychological or psychological disability related to the Collision.  *See id.*  Moreover, Dr. Abelove found that, from a psychological or neuropsychological perspective, Plaintiff A.H. had no restrictions or limitations related to the

Collision.  *See id.*  Based on this evidence, Defendants have met their initial burden of establishing that Plaintiff A.H. did not suffer a head injury that qualifies as a "serious injury" under New York law.

With regard to Plaintiffs' argument that Dr. Abelove's report confirms Plaintiff A.H.'s serious injury, the fact that some test results in Dr. Abelove's report show that that Plaintiff A.H.'s visual memory, perception, and abilities are impaired does not necessarily mean that the report supports a finding of serious injury.  The excerpts of Dr. Abelove's report that Plaintiffs cite are cherry picked test results taken out of the context of the report as a whole, which explains that these results are "likely unrelated to a cognitive decline secondary to the accident in question."  *See* Dkt. No. 28-6 at 29-31.  To support this conclusion, Dr. Abelove noted that Plaintiff A.H. experienced some attention and behavioral issues prior to the Collision and that the records did not show objective or subjective evidence of "head impact, loss of consciousness, or post traumatic amnesia."  *See id.* at 31.  Accordingly, Plaintiffs' argument that Dr. Abelove's report confirms Plaintiff A.H.'s cognitive deficits fails.

To support their position that Plaintiff A.H. suffered "serious injury" as a result of the Collision, Plaintiffs submitted four expert reports, some of which, the Court finds, are sufficient to raise a genuine issue of material fact as to whether Plaintiff A.H.'s alleged head injury constitutes a "serious injury" within the meaning of New York Insurance Law.

One report that Plaintiffs submitted was that of Dr. Paula Zuffante, a licensed board-certified pediatric neuropsychologist, and was based upon a review of the neuropsychological test results that are found in Dr. Abelove's report.  *See* Dkt. No. 36-19.  Dr. Zuffante's report indicates to a reasonable degree of neuropsychological certainty that Dr. Abelove's test results do not indicate insufficient or inconsistent effort, that the test scores provide a valid assessment of

Plaintiff A.H.'s functioning at the time of evaluation, and that the results indicate significant executive functioning deficits and mild difficulty with visual reasoning and spatial organization. *See id.* at 2.  Dr. Zuffante's report also provides a detailed explanation of how she interpreted Dr. Abelove's test results from the tests for performance validity, intellectual abilities, academic screening, processing speed, attention and executive functioning, memory, language, and visual perception skills.  *See id.* at 2-6.  Dr. Zuffante's report conflicts with Dr. Abelove's opinion that there was evidence that Plaintiff A.H. gave inconsistent effort on the neuropsychological tests and that there may be issues with the test validity; however, Dr. Zuffante's report fails to dispute Dr. Abelove's conclusion that the test results were in line with Plaintiff A.H.'s functioning on academic achievement tests prior to the Collision and that his performance on vision-related and executive functioning tests were likely unrelated to the Collision.  *See* Dkt. No. 28-6 at 31.

Additionally, Plaintiffs proffer a report from Diane Simmons-Grab, a pediatric life-care planner, which merely projects the total costs Plaintiff A.H. will expend on recommended treatments and does not relate to whether he suffered a "serious injury."  *See* Dkt. Nos. 36-21, 36-22.

The Court finds that neither of these reports raises a genuine issue of material fact.

Nonetheless, Plaintiffs proffered two additional reports, which are sufficient to raise a genuine issue of material fact.  In this regard, Plaintiffs submitted the report of Dr. Irving Friedman, a neurologist, with his diagnosis that Plaintiff A.H. had a concussion with impaired oculomotor dysfunction, post-traumatic stress disorder, and post-traumatic significant behavioral and cognitive deficits.  *See* Dkt. No. 33-1 at 6.  Dr. Friedman based his report upon a physical examination of Plaintiff A.H. and a review of his school records and medical records related to the Collision.  *See* Dkt. Nos. 36-15, 36-16.

Similarly, Plaintiffs proffered the report of Dr. Renat Sukov, a pediatric rehabilitation specialist, who diagnosed Plaintiff A.H. with concussion syndrome and mild traumatic brain injury and recommended several treatment options.  *See* Dkt. No. 33-1 at 6.  Specifically, Dr. Sukov, who based her report upon a review of medical and school records, found that, as to Plaintiff A.H.'s head injury, he sustained a concussion/mild traumatic brain injury, his most prolonged symptoms related to post-concussion syndrome, and the post-concussive symptoms had led to a significant decline in his academic and socio-behavioral skills.  *See* Dkt. No. 36-18 at 4.  The treatment options that Dr. Sukov recommended include various psychological, neurological, and behavioral evaluations and treatment sessions.  *See id.* at 4-5.

The Court concludes that these reports raise an issue of fact as to whether Plaintiff A.H. suffered a head injury and associated symptoms that qualify as a "serious injury" because, drawing all inferences in Plaintiffs' favor, a reasonable jury could find Plaintiffs' experts more credible and find that Plaintiff A.H. suffered a head injury that constitutes a serious injury.[2] Accordingly, the Court denies Defendants' cross-motion for summary judgment on the issue of whether Plaintiff A.H.'s alleged head injury qualifies as a "serious injury."

---

[2] Defendants argue that both Dr. Friedman's and Dr. Sukov's reports do not raise genuine issues of fact because (1) Dr. Singer found no evidence that Plaintiff A.H. had a permanent injury or disability from the Collision, and (2) Dr. Abelove found that, even if A.H. suffered a concussion from the Collision, no cognitive deficits should be expected.  *See* Dkt. No. 34 at 6.  However, in making this argument, Defendants essentially seek to have the Court determine that their experts are more credible than Plaintiffs' experts, which is an issue for the jury to decide.  *See Ahmed v. H E Transp., Inc.*, No. 06 CV 2938 (CLP), 2008 WL 520244, *10 (E.D.N.Y. Feb. 26, 2008) (collecting cases for proposition that conflicting objective medical examinations from different doctors renders summary judgment inappropriate); *Pagels v. P.V.S. Chems., Inc.*, 266 A.D.2d 819, 819 (4th Dep't 1999) (collecting cases) (holding that, even if the defendants met their initial burden on summary judgment, the "plaintiff's submissions raise triable issues of fact" as to whether she suffered serious injury under § 5102(d) because "differences of opinion among the medical experts with respect to the nature, cause and extent of plaintiff's injuries raise issues of credibility that must be resolved by a jury").

## IV. CONCLUSION

After carefully considering the entire file in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for partial summary judgment, *see* Dkt. No. 23, is **GRANTED** with regard to the issue of Defendants' liability and to strike Defendants' affirmative defenses of comparative negligence and failure to use a seatbelt; and the Court further

**ORDERS** that Defendants' cross-motion for summary judgment, *see* Dkt. Nos. 27-28, is **GRANTED** with regard to Plaintiff A.H.'s alleged left arm fracture and spleen injury and **DENIED** with regard to Plaintiff A.H.'s alleged head injury.[3]

**IT IS SO ORDERED.**

Dated: June 21, 2021
      Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge

---

[3] As a result of this Memorandum-Decision and Order, the following issues remain for trial:

    (1) whether Plaintiff A.H.'s head injury constitutes a serious injury under New York Insurance Law:
    (a) if the jury concludes that Plaintiff A.H.'s head injury is not a serious injury, his claim against Defendants will be dismissed; however,
    (b) if the jury finds that Plaintiff A.H.'s head injury is a serious injury, the jury must then determine the amount of damages to which he is entitled; and
    (2) the amount of damages to which Plaintiff Horowitz is entitled.

Since the parties did not address Plaintiff Horowitz's claims as part of their motions, the Court assumes that the parties have agreed that Plaintiff Horowitz suffered a serious injury. If that is the case, then, with regard to Plaintiff Horowitz's claims, the only issue for the jury to determine is the amount of damages.

**The Court will issue a final pretrial scheduling order, including a date for the trial of the remaining claims, in the near future.**